UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

COWELL NEMOY BROWN,

       Petitioner,

v.                                           CASE NO. 6:06-cv-140-Orl-19KRS

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

       Respondents.

_____

## ORDER

Petitioner filed a second amended petition for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 11) and an accompanying memorandum of law (Doc. No. 12). Respondents filed a response to the second amended petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 22). Petitioner filed a reply and a supplemental reply to the response (Doc. Nos. 26 & 29).

Petitioner alleges four claims for relief: one claim that his constitutional rights were violated because the prosecution used false evidence to convict him (claim one) and three claims that he received ineffective assistance of counsel.

## I.    *Procedural History*

Petitioner was charged by information with robbery with a deadly weapon (count one), aggravated assault with a deadly weapon (count two), criminal mischief (count

three), and resisting an officer without violence (count four).  After a jury trial, he was found guilty as charged and sentenced as a habitual violent felony offender to life in prison as to count one, a five-year term of imprisonment as to count two, and one year terms of imprisonment as to counts three and four.[1]  All sentences were ordered to run concurrent.

Petitioner appealed his convictions and sentences.  By order dated January 28, 2003, the Florida Fifth District Court of Appeal *per curiam* affirmed, and mandate was issued on February 14, 2003.  *Brown v. State*, 837 So. 2d 994 (Fla. 5th DCA 2003).

While his direct appeal was pending, Petitioner sought to correct his sentence pursuant to Florida Rule of Criminal Procedure 3.800(b).  After conducting an evidentiary hearing, the state trial court denied the motion.

Petitioner filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief on April 7, 2003, which he supplemented seven times.  On July 19, 2004, the trial court denied the motion and supplements.  The appellate court *per curiam* affirmed, and mandate was issued on January 7, 2005.  *Brown v. State*, 889 So. 2d 82 (Fla. 5th DCA 2004).

Between January 27 and May 20, 2005, Petitioner filed three Rule 3.850 motions which the state court denied as successive by order dated July 8, 2005.  The appellate court *per curiam* affirmed, and mandate was issued on December 9, 2005.  *Brown v. State*, 916 So. 2d 808 (Fla. 5th DCA 2005).

---

[1]Although he was represented by counsel at trial, Petitioner chose to represent himself at sentencing.

II.    *Claim One*

Petitioner first contends that his Fifth and Fourteenth Amendment rights were violated because his convictions were obtained through the prosecutor's knowing use of false evidence.  In particular, Petitioner avers that "the prosecution repeatedly told the Court and jurors in their closing arguments that the petitioner 'pulled out' a weapon from this boots; 'produced' a weapon within the events giving rise to cts (1, 2); and that the victim testified at trial that he saw the petitioner 'pull' something 'out' of his boot, and saw something 'coming out' [of] the petitioner's boot."  (Doc. No. 11 at 6.)

Mitchell Finn, the victim, testified that he owned a convenience store in Orange County, Florida.  (App. II at 10.)  One morning, Petitioner and another gentleman entered the store.  *Id*. at 10.  While the other individual engaged Mr. Finn, Petitioner removed two 12-packs of beer from the back of the store and walked over to the door.  *Id*. at 11-12.  Mr. Finn left his booth to recover the beer.  *Id*. at 13.  After Petitioner returned the beer, Mr. Finn indicated that he wanted to take his picture.[2]  *Id*. at 14.  Petitioner then began threatening to break things in the store.  *Id*. at 15.  Mr. Finn flipped a switch to automatically lock the doors and called 911.  *Id*. at 15.  Eventually, Petitioner permitted Mr. Finn to take two pictures.  Mr. Finn then unlocked the doors, and Petitioner exited.  *Id*. at 16-17.  On his way out the door, Petitioner laughed and grabbed several snacks off of a shelf.  *Id*. at 17.

_____

[2]Mr. Finn testified that the store posted pictures of people who had tried to shoplift from the store so all the cashiers would know not to allow the person in the store again. (App. II at 15-16.)

Mr. Finn grabbed a can of mace and ran after Petitioner to get the merchandise back.

*Id*. at 18.  Mr. Finn asked for his "stuff" and told Petitioner that the police were coming.

Mr. Finn recounted the ensuing encounter as follows:

Q.     Okay.  And what did he do then?

A.     He started bending over and saying, I'm going to get you; I'm going to mess you up, something like that.  And he's bending over and he's reaching into his inside boot, just right there.

Q.     Which boot?

A.     Left side.

Q.     Okay.  Did – what – did you see him pull anything from his boot?

A.     I didn't actually see anything come out of his boot.  As soon as he bent over for his boot and started reaching in there — there's not very many things people keep tucked inside their boots like that.  So I immediately went over there, reached up – he's like this – I reached up, right under his arm, and squirted him in the face with Mace; I think it was twice.

Q.     Okay.  Now when you saw him reaching for his boot, what did you think was happening at that point?

A.     As soon as he started digging into his boot – I've seen this before, too.  They invariably come out with some sort of pocketknife.  If they have to reach in there and dig around like that, it's usually a pocketknife.  If they're quick, it's usually a straight blade, because it usually has got the handle sticking out of it real easy.

Q.     Okay.  Did you ever see anything that looked like it might have been a knife in his hand?

A.     When I was – not in his hand.  When I was bending down, just – to Mace him, I was able to see inside his boot, and I did see shiny metal in there.

*Id*. at 21-22.   After spraying Petitioner with mace, Mr. Finn ran back to the store with Petitioner in pursuit.   At one point, Petitioner tried to grab Mr. Finn's legs and Mr. Finn heard Petitioner threaten to cut him up.   *Id*. at 22.

Mr. Finn ran back to the store and manually locked the deadbolt.   *Id*. at 23. Petitioner, who was right behind him, hit the door and began shaking it.   He then kicked the door until the glass broke.   *Id*. at 24-25.   Mr. Finn resumed his conversation with the 911 operator, and Petitioner walked away from the store.   *Id*. at 25.   The police responded and, less than ten minutes later, returned to the store with Petitioner in a police vehicle.   *Id*. at 26-27.

At the time he was arrested, the police officer found a pocketknife in the pocket of the shorts Petitioner was wearing underneath his pants.   *Id*. at 62.   In addition, some snack wrappers were found where Petitioner was captured.   *Id*. at 91, 93-94.

Respondents construe this claim as a challenge to the sufficiency of the evidence and note that it was asserted on direct appeal.   *See* Doc. No. 22 at 7.   Petitioner, on the other hand, states that his claim is based on *Giglio v. United States*, 405 U.S. 150 (1972), not the sufficiency of the evidence.   *See* Doc. No. 26 at 5-6.   Thus, this Court will consider claim one in the context of *Giglio*, rather than the sufficiency of the evidence.[3]

---

[3]Petitioner did not raise a *Giglio* claim in his direct appeal; however, he did raise such claim in his Rule 3.850 motion.   *See* App. X at 3-10.   The trial court determined that this claim was procedurally barred because it should have been raised on direct appeal.   *See* App. XXI at 2.   The State has not raised a procedural bar argument in this Court.

Under *Napue v. Illinois*, 360 U.S. 264, 269 (1959), and *Giglio*, 405 U.S. at 153-54, a petitioner must demonstrate that the prosecutor "knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *United States v. Dickerson*, 248 F.3d 1036, 1041 (11th Cir. 2001), *cert. denied*, 536 U.S. 957 (2002) (quotations omitted). This rule covers not only inculpatory false testimony, but also falsehoods tending to enhance the credibility of a witness. *Napue*, 360 U.S. at 269. "[T]he falsehood is deemed to be material 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).

Petitioner has not shown that the State knowingly presented false testimony. He has not presented any evidence that the testimony of the victim was in fact false or, assuming it was false, that the State was aware that it was false. A full reading of the record reveals that the alleged false testimony consisted of variations between the victim's written statement and his trial testimony which are not unusual. Trial testimony affords more of an opportunity to "flesh out" the details than does a written statement. In fact, defense counsel cross-examined the victim on many of the alleged inconsistencies that Petitioner contends constitute "false testimony." Petitioner's unsupported allegations are insufficient to sustain this claim. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (explaining that a petitioner is not entitled to an evidentiary hearing or federal habeas relief on his ineffective assistance of counsel claims when the claims are conclusory or wholly incredible), *cert. denied*, 502 U.S. 1105 (1992).

6

III.    *Claims Two, Three, and Four*

Petitioner contends that he received ineffective assistance of counsel because trial counsel (a) failed to impeach Mr. Finn and Officer Weaver (claim two); (b) failed to object to the prosecutor's knowing use of false evidence (claim three); and (c) opened the door to bad character and propensity testimony, failed to request the *Williams* rule jury instruction, and "invited the trial court to error."   Petitioner raised these claims in his Rule 3.850 motion.  The trial court denied relief, and the state appellate court *per curiam* affirmed.

Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."  *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005), *cert. denied*, 127 S. Ct. 348 (2006).  The meaning of the

clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."  *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

These three claims all involve allegations of ineffective assistance of counsel.  The state trial court utilized the clearly established law set forth in *Strickland v. Washington*, 466 U.S. 668 (1984): (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance

prejudiced the defense.[4]  *Id*. at 687-88.  *See* App. XXI at 2-3.  Therefore, the clearly established federal law component has been satisfied.

This Court agrees with the state trial court's assessment of these three claims.  First, defense counsel did an admirable job cross-examining both the victim and Officer Weaver. He elicited admissions from the victim that he did not actually see Petitioner with any merchandise outside of the store and that he did not actually see a knife.  *See* App. II at 37-38, 40, 43.  He then used these admissions during closing to argue that Mr. Finn was the aggressor and reasonable doubt existed as to whether Petitioner committed any of the crimes.  *Id*. at 106-08.  Clearly, Petitioner's assertions in claim two that defense counsel failed to impeach Mr. Finn and Officer Weaver fail on both the performance and the prejudice elements of the *Strickland* analysis.[5]

As discussed in connection with claim one, Petitioner has not demonstrated that the prosecutor knowingly used false testimony.  Without a showing of the presentation of false testimony, Petitioner cannot prevail on his claim that counsel should have objected to such evidence.

_____

[4]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

[5]The Court also notes that Mr. Finn's trial testimony was consistent with his deposition testimony.  During the deposition and at trial, he indicated that when Petitioner reached into his boot he saw a shiny, metal object that he assumed was a knife.  *See* App. II at 21-22 & Doc. No. 30, Exhibit VI at 19-21, 25.  This assumption was strengthened by Petitioner's threat to cut him.  *See* App. II at 22 & Doc. No. 30, Exhibit VI at 25-26.

To the extent that Petitioner argues that counsel should have objected to the prosecutor's closing argument as misleading and inaccurate, he also is not entitled to relief. A complete review of the record reveals that the prosecutor's closing argument was a fair comment on the evidence presented at trial. The fact that the prosecutor used the word "sharp" rather than "shiny" was not prejudicial, especially given the fact that Petitioner threatened to "cut" Mr. Finn and a knife was found on Petitioner's person less than ten minutes after the incident. Therefore, claim three must fail.

In claim four, Petitioner contends that defense counsel opened the door for evidence of bad character and failed to request a proper jury instruction. During cross-examination of Mr. Finn, defense counsel did open the door for testimony regarding an earlier attempted shoplifting incident involving Petitioner. *See* App. II at 32-33. Like the state court, this Court finds that this evidence was not prejudicial to the case at hand. First, the instant trial did not involve a charge of shoplifting. Instead, the charges were robbery with a deadly weapon, aggravated assault with a deadly weapon, criminal mischief, and resisting an officer without violence. All four charges involved activities that occurred outside, rather than inside, the store. Furthermore, the evidence against Petitioner was substantial. Mr. Finn clearly identified Petitioner and testified in detail about the incident. Petitioner was quickly apprehended in the vicinity with a knife in his pocket. Petitioner has not established any prejudice stemming from the admission of the testimony regarding his prior attempt to shoplift from the same store.

In the present case, the Court finds that Petitioner has not demonstrated, and this Court is unable to conclude, that the state court's decision was either "contrary to" or an "unreasonable application of" clearly established federal law. Moreover, Petitioner has not demonstrated that the state court made an unreasonable determination of the facts in light of the evidence presented. Claims two, three, and four must be denied pursuant to section 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED:**

1.      This case is **DISMISSED WITH PREJUDICE**.

2.      Petitioner's Motion for Leave for Final Round of Briefing (Doc. No. 33) is **DENIED**. The Court notes that Petitioner filed a twenty page memorandum of law in support of his second amended habeas petition (Doc. No. 12), a twenty page motion for leave to expand the habeas corpus record (Doc. No. 18), a sixty-two page appendix to the second amended habeas petition (Doc. No. 20), a two volume appendix in support of his second amended habeas petition (Doc. No. 20), a twenty page reply (Doc. No. 26) to Respondents' response to the petition, and a nine page supplemental reply (Doc. No. 20), all of which have been reviewed and considered. Petitioner has failed to demonstrate that further briefing is warranted.

3.      Petitioner's Motion Requesting an Evidentiary Hearing (Doc. No. 34) is **DENIED** as moot.

4.     To the extent that it seeks any relief, Petitioner's Notice of Inquiry (Doc. No. 36) is **DENIED**.  The Court notes that Clerk of the Court mailed a copy of the docket sheet to Petitioner on March 1, 2007.

5.     **The Clerk of the Court shall enter judgment accordingly and is directed to close this case**.

**DONE AND ORDERED** at Orlando, Florida, this __11th___ day of April, 2007.

_____
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT


Copies to:
sa 4/11
Cowell Nemoy Brown
Counsel of Record

12